GERSHAM L. GARDINER *vs.* THE TOWN COUNCIL of the town
of JOHNSTON.

Under Pub. Laws R. I. cap. 521, of March 23, 1864, authorizing turnpike corporations to convey their roads to the towns, it is not needful that the proceedings of the towns should be subsequent to the conveyance.

August 1, it was voted in a town meeting that the town council be requested to receive a turnpike; August 30, a deed was signed and sealed; September 9, the town council voted to receive the turnpike; October 7, the deed was acknowledged.

*Held*, that the turnpike became a highway September 9.

Pub. Laws R. I. cap. 634, of March 9, 1866, gave town councils power to direct surveyors of highways to grade or change the grade of any street, and provided that no change of grade should be made without notice. In 1867 a town council appointed a committee to report a grade for P. Street; the town council accepted the report, and voted that "the grade be placed" as therein stated. In 1872 the town council directed the surveyor to grade P. Street, and to report a profile of the street. On this report the town council caused notice to be given. In 1880 the surveyor worked P. Street down to grade.

*Held*, that the grade worked in 1880 was the first legal and actual grade.

*Held*, further, following *Aldrich* v. *Aldermen of Providence*, 12 R. I. 241, that an abutting owner is not entitled to damages for the establishment of a grade where no grade previously existed.

ALTERNATIVE WRIT OF MANDAMUS.    On the respondent's return to the writ.

The writ was issued in this case to require the town council to pass an order of notice in accordance with Pub. Stat. R. I. cap. 65, § 38, which is as follows :

"SECT. 38. Whenever any abutting owner shall deem himself to be injured by any change in the grade of a highway, and such owner shall make claim for compensation for such injury to the town council within forty days after such change of grade shall have been completed, the town council shall appoint three suitable and indifferent men, not interested in the lands bordering on the highway the grade of which has been changed, who shall be engaged to the faithful discharge of their duties, and who shall go upon the highway when the grade thereof has been changed, and examine the same, and the estate alleged to have been injured by changing the grade of said highway, and endeavor to agree with the owner of such estate as to the amount of damage by him sustained by means of such change of grade; and if they agree with the owner, they shall reduce such agreement to writing and report the same to the town council, which report shall be binding

upon such owner and upon the town ; but if they fail to agree with the owner as to such damage, they shall report such failure to the town council, whereupon the council, after notice to such owner and offering him an opportunity to be heard, shall proceed to appraise the damage done to such owner by means of such change of grade."

Or to show cause why a peremptory writ should not issue.

*January* 28, 1888.  STINESS, J.  Plainfield Street, in the town of Johnston, was formerly a turnpike road, maintained by the Providence and Norwich Turnpike Society.  August 1, 1865, at a special town meeting, it was voted that the town council be requested to receive the part of said turnpike in the town of Johnston, and to arrange with the corporation for its conveyance. A deed to the town was drawn, dated August 30, 1865, and on September 9, following, the town council voted to receive the portion of said road referred to in the deed ; notice having been given to abutting owners to appear and be heard for or against the reception of the same.  The deed was acknowledged October 7, 1865, but no subsequent action was taken by the town council.  In June, 1867, the town council appointed a committee to survey and report a grade for Plainfield Street.  In July, 1867, the committee made a report which the council voted to receive, and also voted that the grade be placed as stated in said report. The petitioner claims that this established the first grade of the street, and that subsequent proceedings made a change of grade entitling him to damages.  The first question, then, is whether this amounted to an establishment of grade under the statute. The town contends that the notice to parties and the action of the town council upon accepting a turnpike road under Public Laws R. I. cap. 521, of March 23, 1864, must follow the conveyance, and, therefore, as there were no notices nor proceedings after the execution of the deed, October 7, 1865, the road did not thereby become a public highway in which a grade could be established. Chapter 521 provided for the transfer of a turnpike road " upon such terms as may be agreed upon."  From the date of the deed and the cancellation of the revenue stamp thereon by the treasurer who signed the deed, it appears that the conveyance by the corporation, in all but the acknowledgment, was made August 30, 1865.

It was undoubtedly offered to the town council at its meeting September 9, 1865, because the vote then passed referred to the deed; and at that time, notice having been given, the council voted to accept it. A deed without acknowledgment was good between the parties to it. Rev. Stat. R. I. cap. 146, § 3. But if it was not executed until it was acknowledged, still we do not see that cap. 521 necessarily implies that the proceedings of the town shall be subsequent to the conveyance. It would be idle to require the corporation to execute a conveyance which the town was not to accept; and the council could not vote to accept until the reasons for and against it had been presented and considered. When the corporation has offered to convey and the town to accept, the minds of the parties have met. The conveyance, if subsequently made, pursuant to the terms agreed upon, completes the transaction, and the road thereupon, if not from the date of the acceptance, becomes a highway according to the statute. In this case, we think the road became a highway from the date of the acceptance of the deed then made, September 9, 1865.

The next question is whether a grade was established in 1867. The first statute relating to the grade of highways was Pub. Laws R. I. cap. 310, of January, 1859. But the grade there referred to is one made or established by a surveyor of highways, according to the custom then prevailing. *Aldrich* v. *Aldermen of Providence*, 12 R. I. 241; *Rounds* v. *Mumford*, 2 R. I. 154. This statute did not give the town council any authority to establish a grade by vote, nor to do anything about it, except to take action to compensate persons who had been injured by a change of grade. March 9, 1866, another act was passed, Pub. Laws R. I. cap. 634. This act gave the town council power to direct surveyors of highways to grade or change the grade of any street or highway; and it also provided that no change of grade should be made except by direction of the town council, after notice to abutting owners. This was the authority which the town council of Johnston had in 1867, when it is claimed the first grade was established. It was not an authority to establish a grade, or to make what is frequently called a paper grade, but simply an authority to direct the surveyors to grade or change a grade. The act does not even state whether the council or the surveyor is to determine what the

grade or change shall be ; but assuming that the right to direct a grade carries with it a right to define its character and extent, it is nevertheless clear that such a grade did not become an established grade by the mere vote of the council, nor until the direction had been complied with by the surveyor. It was then an actual and in that way an established grade. In the present case it does not appear that the so called grade of 1867 was worked by the surveyor, or that the council ever ordered that or any grade to be worked on Plainfield Street prior to 1872. The appointment of a committee to report a grade was a preliminary act for the purpose of informing the council about a suitable grade. The vote " that the grade be placed as stated in said report " was indicative of approval of such a grade, but it was futile for its establishment, because it gave no direction to the surveyor, which was the only power the council possessed under the statute. In May, 1872, the town council directed the surveyor of said Plainfield Street " to grade or change the grade," following the words of the statute, and to cause an exact profile of said street and grade to be made, and report to the council. The petitioner avers that upon such report the council ordered notice to the abutting owers, and on June 1, 1872, established the grade ; but that no notice was served on him. The return sets out that the petitioner, with others, made written application for such establishment of grade, and the return of the town sergeant shows that he had notice of the meeting of the council when it was considered. The petition further sets out that on or about the        day of July, A. D. 1880, the surveyor, in accordance with the above order, proceeded to change the grade of Plainfield Street, and that within forty days after the completion thereof he presented his claim in writing for damages. It is upon this claim that he now asks for an order for action by the town council.

As no grade was made or established under the proceedings had in 1867, it follows that the grade made in 1880 was the first legal and actual grade. Hence, according to the opinion of this court in *Aldrich* v. *Aldermen of Providence, supra,* that " an abutter is not entitled to damages for the establishment of a grade where none has previously existed," the petitioner in this case is

not entitled to damages, and consequently not entitled to the order for which he prays.

           *Writ discharged and petition dismissed.*

*James C. Collins*, for petitioner.

*Nicholas Van Slyck*, for respondent.